IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**OREGON NATURAL DESERT ASSOCIATION** et al.,

      Plaintiffs,

      v.

**UNITED STATES FOREST SERVICE,** et al.,

      Defendants,

      and

**JEFF HUSSEY**, et al.,

      Intervenor-Defendants.

No. 3:03-cv-0213-PK

OPINION AND ORDER

**MOSMAN, J.**,

On October 3, 2017, Magistrate Judge Paul Papak issued his Findings and Recommendation (F&R) [485], recommending that Plaintiffs' Motion for Summary Judgment [416] should be DENIED, Federal Defendants' Amended Motion for Summary Judgment [482] should be GRANTED, Intervenor-Defendants' Corrected Cross-Motion for Summary Judgment [459] should be GRANTED, and this action should be dismissed with prejudice. The F&R DENIED as moot Intervenor-Defendants' Corrected Motion to Strike Plaintiffs' Extra-Record Filings [458]. Plaintiffs and Federal Defendants objected [489, 490]. Plaintiffs, Federal

1 – OPINION AND ORDER

Defendants, and Intervenor-Defendants responded [495, 496, 497]. I held oral argument on April 5, 2018 on the parties' objections and responses [500].

## DISCUSSION

The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to make a de novo determination regarding those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F&R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F&R. 28 U.S.C. § 636(b)(1)(C).

Upon review, I agree with Judge Papak's recommendations and I ADOPT the F&R [485] as my own opinion. I write separately to clarify certain issues raised in the parties' objections and at oral argument.

### I. Justiciability

#### A. Challenge to Agency Pattern, Practice, or Policy

The F&R concludes that Plaintiffs' challenges to the Forest Service's final grazing decisions on the seven allotments are not programmatic challenges and are therefore justiciable. F&R [485] at 10–11. Federal Defendants object to this conclusion and urge the Court to instead conclude that Plaintiffs are challenging the Forest Service's grazing "program," rather than individual decisions that constitute final agency actions. Fed. Defs. Objections [490] at 9–11.

Plaintiffs argue they are challenging a series of final agency actions that are justiciable, but agree that the F&R uses some "programmatic" language. Pls. Response [497] at 4–5. At oral argument, Federal Defendants argued that the F&R's conclusion on this issue was problematic for two reasons: first, because of the sheer number of agency decisions challenged by Plaintiffs (over 100), and second, because their operative Complaint effectively challenges all agency decisions within a program.

Numerically, Plaintiffs' challenge is not troubling. This case spans a fifteen-year history, which required Plaintiffs to add challenges over the years to many agency decisions on these seven allotments. And there is no reason Plaintiffs' decision to challenge a large number of agency decisions in one lawsuit, versus multiple lawsuits, is per se problematic under the Administrative Procedure Act (APA).

I agree with the F&R, however, that the programmatic issue is a "close question" under *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). As the Supreme Court held in *Lujan*, a party may not challenge an entire program under the APA, but instead "must direct its attack against some particular 'agency action' that causes it harm." *Id.* at 891. At oral argument, the parties agreed that a plaintiff's claims challenging every agency decision within a grazing program could theoretically be barred by *Lujan*. *See id.* ("[The] respondent cannot seek *wholesale* improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made."). But Federal Defendants conceded at oral argument that significant portions of the Malheur National Forest would be left untouched by any decision in this case. And by challenging individual agency actions such as grazing permits and annual operating instructions (AOIs), the operative Complaint in this case complies with *Lujan*'s requirement that plaintiffs challenge

specific agency actions. *See Oregon Nat'l Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 990 (9th Cir. 2006) (concluding that "an AOI is a final agency action subject to judicial review under § 706(2)(A) of the APA."). Furthermore, the Ninth Circuit has held that plaintiffs may seek review of broader practices by challenging a specific agency action tied to those practices. *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1067 (9th Cir. 2002) ("[I]n order to win scrutiny of the Forest Service's forest-wide management practices, Neighbors must challenge a specific, final agency action, the lawfulness of which hinges on these practices.").

Although Plaintiffs here challenge over 100 AOI and permit decisions, each of these decisions on its own is a final agency action. Framing this as one suit challenging numerous permitting and other decisions, I agree with the F&R that Plaintiffs may challenge the Forest Service's decisions to issue dozens of permits and/or AOIs.[1]

### B. The Forest Service's Discretion to Issue Allotment Management Plans (AMPs)

Plaintiffs argue the Forest Service's implementing regulations require it to prepare and update AMPs, and by failing to do so, the Forest Service violated the APA because it unlawfully withheld or delayed required agency action. Pls. Objections [489] at 29–30. Plaintiffs do not dispute that 43 U.S.C. § 1752 gives the Secretary broad discretion on whether and when to prepare AMPs. *See* 43 U.S.C. § 1752(d) ("All permits and leases for domestic livestock grazing issued pursuant to this section may incorporate an allotment management plan developed by the Secretary concerned."); *id.* § 1752(i) (specifying that the Secretary has discretion for the "priority and timing" of environmental analyses related to "a grazing allotment, permit, or lease"). But Plaintiffs argue that the Forest Service relinquished that discretion by promulgating

---

[1] Separately, I note the parties' concern that the F&R refers to a "grazing program." To clarify, this opinion only addresses the Forest Service's specific agency actions as challenged by Plaintiffs, not a "grazing program" as occasionally mentioned in the F&R.

36 C.F.R. § 222.2(b). *See* 36 C.F.R. § 222.2(b) ("Each allotment will be analyzed, . . . and an allotment management plan developed."). The F&R concludes that Plaintiffs' AMP challenges are not justiciable, because 43 U.S.C. § 1752 gives the Forest Service ultimate discretion on AMPs. F&R [485] at 15.

I agree with the F&R's recommendation on this issue. I write separately to note that at oral argument, Federal Defendants persuasively argued that the Court should defer under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and *Auer v. Robbins*, 519 U.S. 452 (1997), to the Forest Service's reasonable interpretations of the governing statute and related regulations. *See* 43 U.S.C. § 1752; 36 C.F.R. § 222.2(b). The Forest Service interprets 43 U.S.C. § 1752 and 36 C.F.R. § 222.2(b) to give the agency discretion about when and how to adopt AMPs. In light of 43 U.S.C. § 1752, I conclude that the Forest Service's interpretation of 36 C.F.R. § 222.2(b) is reasonable. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) ("*Auer* ordinarily calls for deference to an agency's interpretation of its own ambiguous regulation, even when that interpretation is advanced in a legal brief.").

**II.   NFMA Claims**

Plaintiffs claim the Forest Service violated NFMA by issuing grazing permits and AOIs "without evaluating and describing how the authorized grazing is consistent with" narrative Forest Plan standards, INFISH Standard GM-1, and the Amendment 29 bank stability standards. Mot. Summ. J. [416] at 31. The F&R concludes that the Forest Service did not act arbitrarily or capriciously under the APA by allowing grazing on the seven allotments at issue in this case. F&R [485] at 16–27.

I agree with the F&R's recommendations on this issue. I write separately to address Plaintiffs' assertion at oral argument that this case is akin to *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983). The Supreme Court held in *Motor Vehicle Manufacturers* that "an agency must cogently explain why it has exercised its discretion in a given manner," and that "an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Id.* at 48, 50. The Federal Defendants countered that the Forest Service adequately explained why it made the decisions it did. They argued that this case is instead similar to *The Lands Council v. McNair,* under which courts must "defer to an agency's determination in an area involving a high level of technical expertise." *The Lands Council v. McNair*, 537 F.3d 981, 993 (9th Cir. 2008). *overruled in part on other grounds by Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008).

The Federal Defendants' argument is persuasive. A review of the administrative record reflects that under the standard set forth in *Motor Vehicle Manufacturers*, the Forest Service adequately considered relevant data and went to some length to justify its choices. *See* 463 U.S. at 48, 50. The record shows the Forest Service used several data sets for particular reasons: it used habitat indicator data to evaluate conditions of the bull trout habitat annually prior to issuing permits and AOIs, and PacFish/InFish Effectiveness Monitoring Program (PIBO) data to measure general trends. *See* 4SPAR [408] at 2796 (noting that "the livestock grazing end-point indicators were developed to meet PACFISH/INFISH grazing standards and guidelines, enclosure B of the LMRP and water quality BMPs."); PAR [119] at 5807 (effective monitoring plan developed to "assess whether management direction, implemented through [PIBO] is effective in maintaining or improving aquatic and riparian conditions at both the landscape and watershed scales on federal lands"). I agree with the F&R that these choices reflect the Forest

Service's reasoned "determination[s] in an area involving a high level of technical expertise." *See Lands Council*, 537 F.3d at 993 (internal quotation marks omitted).

### III. Conclusion

Upon review, I agree with Judge Papak's recommendations and I ADOPT the F&R [485] as my own opinion. Plaintiffs' Motion for Summary Judgment [416] is DENIED, Federal Defendants' Amended Motion for Summary Judgment [482] is GRANTED, Intervenor-Defendants' Corrected Cross-Motion for Summary Judgment [459] is GRANTED, and this action is dismissed with prejudice.

IT IS SO ORDERED.

DATED this  16  day of April, 2018.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge